IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANDREW MATTHEW OBRIECHT,

                    Petitioner,                  OPINION AND ORDER

    v.                                       07-C-409-C

MICHAEL THURMER, Warden,
Waupun Correctional Institution,

                    Respondent.

---

Petitioner Andrew Matthew Obriecht has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  Petitioner challenges his November 19, 1999 conviction in the Circuit Court for Dane County for one count of attempted second-degree sexual assault of a child, five counts of fourth-degree sexual assault and one count of disorderly conduct, all as a repeat offender.  Petitioner concedes that he did not file his petition within the one-year limitations period established by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(d).  He contends, however, that this court should find the petition to be timely under the doctrine of equitable tolling, alleging that he was prevented from filing his petition on time by the "gross misconduct" of his lawyer.  In the alternative, he asks this

---

[1]Respondent has indicated that petitioner is currently incarcerated at the Waupun Correctional Institution, where the warden is Michael Thurmer.  Accordingly, I have amended the caption to reflect Michael Thurmer instead of Larry Jenkins as the proper respondent.  Rule 2(a) of the Rules Governing Section 2254 Cases.

court to vacate its order dismissing without prejudice an earlier habeas application that petitioner filed in December 2002 and allow the instant petition to be filed as an amended petition relating back to the date of that original petition.

I am denying petitioner's motion to extend his deadline and dismissing the petition as untimely. Petitioner's claim that his lawyer engaged in "gross attorney misconduct" is not supported by the record and even if it were, it would not support a finding of equitable tolling under the governing law in this circuit. Moreover, petitioner has failed to show that he was pursuing his rights diligently throughout the time period that he contends should be tolled. These same reasons preclude me from reopening the prior judgment dismissing his initial petition.

Respondent has not disputed the facts alleged by petitioner. From the petition, its appendix and my independent review of records maintained on the Wisconsin Consolidated Court Automation Programs (CCAP) and records of the Wisconsin Supreme Court and Court of Appeals, I find the following facts for the purposes of deciding the instant motion.


FACTS

On June 30, 1999, following a jury trial, petitioner was found guilty in Dane County case 98 CF 271 of one felony count of attempted second-degree sexual assault of a child, five misdemeanor counts of fourth-degree sexual assault and one count of disorderly conduct.

On November 19, 1999, petitioner was sentenced to a combined seven years' incarceration on the misdemeanor counts and probation on the felony counts.

Petitioner appealed his conviction to the Wisconsin Court of Appeals. He presented the single claim that the trial court had abused its discretion when it limited questioning by petitioner's lawyer during jury selection. On August 30, 2001, the court of appeals rejected petitioner's argument and affirmed the conviction. The Wisconsin Supreme Court denied his petition for review on December 17, 2001.

In the meantime, petitioner's felony probation had been revoked. On August 17, 2001, he was sentenced to seven years in prison, consecutive to the combined seven years on the misdemeanor counts. On August 29, 2001, petitioner filed a notice of his intent to appeal or seek postconviction relief from that sentence. On December 23, 2002, the Wisconsin Court of Appeals issued an order extending petitioner's deadline for filing that appeal until March 1, 2003.

On December 13, 2002, petitioner filed an application for a writ of habeas corpus in this court.[2] Petitioner contended that the lawyer who had represented him in the initial state court proceedings had been ineffective for failing to investigate and call witnesses who

---

[2]Although the court did not receive the petition until December 18, 2002, petitioner signed it on December 13, 2002. I will assume petitioner gave it to the proper prison authorities for mailing on the same day he signed it, meaning that the filing date is December 13, 2002. Jones v. Bertrand, 171 F.3d 499, 502 (7th Cir. 1999) ("mailbox rule" applies to habeas petitions).

would have testified in petitioner's defense and for arguing to the jury that petitioner was guilty of disorderly conduct without obtaining petitioner's permission to make that concession.  Also, he contended that his postconviction/appellate lawyer had a conflict of interest because both he and trial counsel were employed by the state public defender's office.  Petitioner stated that he had not yet exhausted his state court remedies with respect to these claims but that he was in the process of hiring a lawyer to bring a state court postconviction motion.  Believing that his deadline for filing a federal habeas petition would expire on December 17, 2002, petitioner asked this court to accept his petition for filing, dismiss it without prejudice for failure to exhaust and allow him to reopen the petition with the original filing date after he had exhausted his state court remedies.

On January 23, 2003, I entered an order dismissing the petition without prejudice on the ground that petitioner had failed to exhaust his state court remedies with respect to his claims of ineffective assistance of counsel.  Obriecht v. Swenson, 03-C-004-C, dkt. #5.  I found that petitioner's conviction had not become final until March 17, 2002, and therefore petitioner's one-year limitations period for filing a federal habeas petition would not expire until March 17, 2003.  I declined to grant petitioner's request to stay the petition, finding that petitioner had adequate time (approximately 60 days) within which to pursue his state court remedies with respect to his unexhausted claims without jeopardizing the timeliness of a federal habeas challenge.  Id., at 3 (citing Freeman v. Page, 208 F.3d 572, 577 (7th Cir.

4

2000) and <u>Tinker v. Hanks</u>, 172 F.3d 990, 991 (7th Cir. 1999)).  I advised petitioner that he needed to act quickly and that he risked missing the statute of limitations if he continued to wait for a lawyer to help him file his state court collateral attack.  <u>Id</u>., at 5.

Meanwhile, in late December 2002, petitioner retained Jenelle Glasbrenner for the purpose of filing a state court writ of habeas corpus to challenge the performance of petitioner's appellate lawyer.  Glasbrenner, whose office was in Delavan, Wisconsin, met with petitioner on December 21, 2002 at the Prairie Correctional Facility in Appleton, Minnesota.

Earlier that year, Glasbrenner had been investigated by the State Public Defender's Office for over billing for work she had performed on appointment cases.  As a result of that investigation, Glasbrenner had entered into a settlement in May 2002 which included paying $40,000 to the public defender's office and relinquishing payment on claims that she had submitted but had not yet been paid.  (Glasbrenner's conduct led to a 2004 misdemeanor conviction for theft by fraud and a six-month suspension of her law license in April 2005.  <u>In re Disciplinary Proceedings Against Glasbrenner</u>, 2005 WI 50, 280 Wis. 2d 37, 695 N.W. 2d 291.)

In letters dated January 27, and 28, 2003, petitioner informed Glasbrenner of this court's January 23, 2003 order advising petitioner that he had until March 17, 2003 in which to file a state court postconviction motion.  According to petitioner, Glasbrenner

contacted him "shortly after" he had forwarded these letters and informed him that he did not need to worry about his March 17, 2003 deadline because it had been extended by the Wisconsin Court of Appeals and that she would eventually file petitioner's claims.

At the time petitioner hired Glasbrenner, Basil Loeb, a lawyer appointed by the state public defender's office, was representing petitioner with respect to his direct appeal of his sentence after revocation in 98 CF 271 and in another Dane County case, 99 CF 2189. Wisconsin Consolidated Court Automation Programs (CCAP), http://wcca.wicourts.gov (last visited October 18, 2007) (identifying Loeb as petitioner's lawyer in case no. 98 CF 271 from Jan. 7, 2003 to July 23, 2003 and in case no. 99 CF 2189 from Jan. 7, 2003 to Nov. 12, 2003).  On February 12, 2003, petitioner wrote to Loeb and stated that he had been in segregation since February 7.  In a letter to petitioner dated February 19, 2003, Glasbrenner indicated that she had tried numerous times to set up a telephone conference with him and had heard from Loeb that petitioner was in solitary confinement.  Glasbrenner stated that Loeb would be seeking an extension of petitioner's March 1, 2003 deadline for filing an appeal.

On February 21, 2003, the court of appeals entered an order extending petitioner's deadline for appealing his post-revocation sentence to April 1, 2003.  On March 6, 2003, Glasbrenner sent a medical authorization form to petitioner to allow her to speak with his treating physician or psychologist about his condition.  In the letter accompanying the form,

6

Glasbrenner stated that she had been having trouble scheduling a telephone conference with petitioner because of his being held in segregation.

Glasbrenner did not file a motion for state court collateral relief on or before March 17, 2003.  On March 19, 2003, petitioner was transferred to the Wisconsin Resource Center in Winnebago, Wisconsin.  Apparently, by March 26, 2003, petitioner had decided to have Glasbrenner take over from Loeb the appeal of his post-revocation sentence.  On that date, Glasbrenner filed a motion in the court of appeals for an extension of petitioner's deadline for filing that appeal.   (This motion could only have related to petitioner's direct appeal and not to any collateral attack, for Wisconsin sets no time limit for seeking collateral relief. Wis. Stat. § 974.06(2) (motion attacking sentence collaterally "may be made at any time"); State ex. rel. Coleman v. McCaughtry, 2006 WI 49, ¶ 16 & n. 12, 290 Wis. 2d 352, 714 N.W. 2d 900 (finding petitioner's 17-year delay in bringing habeas action to challenge effectiveness of appellate counsel unreasonable, but noting that delay of that length could be reasonable under different circumstances).)  The state court of appeals granted the motion and extended petitioner's deadline to June 1, 2003.

On April 2, 2003, petitioner was transferred to the Acute Psychological Stabilization Unit at the Wisconsin Resource Center.  He refused to take medication despite the belief of the treatment team that he was suffering from a major mental illness, leading institution staff to initiate a medication commitment pursuant to Wis. Stat. § 51.20(1)(ar).

7

Glasbrenner visited petitioner at the Wisconsin Resource Center on May 21, 2003. On May 23, 2003, Glasbrenner sent a letter to petitioner outlining several claims that she was prepared to raise in a writ of habeas corpus to be filed in state court and other claims that she was prepared to raise on direct appeal from petitioner's sentencing after revocation. Glasbrenner enclosed portions of petitioner's transcripts and indicated that she had reviewed them. She informed petitioner that on her way out of the facility, petitioner's case worker had told her that a report from petitioner's psychiatrist would be available in the next few days. Glasbrenner stated that she was going to attempt to obtain a copy of the report and incorporate the findings into the motions. She indicated that the motions would be filed on June 2, 2003. Glasbrenner informed petitioner that she would contact him on an as-needed basis, cautioning him that if she continued to speak to him daily or every other day, his legal fees would become "astronomical." Aff. of Pet., dkt. #2, App. B, exh. A-4.

Apparently, sometime between May 23 and May 30, 2003, Glasbrenner became concerned that petitioner might not be competent. On or about May 30, 2003, she filed a Motion to Determine Competency in the circuit court. (According to CCAP, Loeb filed a similar motion in 99 CF 2189. No copy of either motion is in the record.) Shortly thereafter, she filed a motion in the court of appeals for an extension of petitioner's deadline for filing his direct appeal, explaining that she had reason to believe petitioner was not competent to proceed. The court of appeals granted the motion, ordered counsel to inform

8

it within 10 days of any circuit court determination finding petitioner competent and explained that petitioner would have 60 days after being found competent in which to file his appeal.

On June 17, 2003, Glasbrenner filed a motion in the trial court for permission to withdraw as petitioner's attorney in 98 CF 271.  Glasbrenner asserted that her relationship with petitioner had deteriorated to the point where she could no longer represent him effectively.  On July 23, 2003, the court held a hearing on the motion; petitioner appeared by telephone.  After the hearing, the court granted the motion.  Glasbrenner returned petitioner's file to him sometime after September 1, 2003.

In 99 CF 2189, the case for which Loeb was representing petitioner, the circuit court held a competency hearing on November 6, 2003, after which it found that petitioner was competent to proceed.  CCAP, http://wcca.wicourts.gov (dkt. #60 in Dane County case no. 99 CF 2189). Apparently, however, no one ever informed the court of appeals of this fact with respect to petitioner's appeal of his post-revocation sentence in 98 CF 271, causing the direct appeal to languish until approximately October 2005.  (In January 2006, the court of appeals issued an order granting petitioner an extension of time in which to file his direct appeal from the post-revocation judgment; that appeal is still pending in the court of appeals. Wisconsin Supreme Court and Court of Appeals, http://wscca.wicourts.gov (last visited Oct. 17, 2007) (appeal no. 2006AP2355-CR)).

9

In the meantime, in July 2004 petitioner retained Ralph Sczygelski to review his file and begin preparing a state court collateral attack on the original judgment. However, Sczygelski never filed the motion because of a dispute with petitioner's family over attorney's fees.

About a year later, on June 20, 2005, petitioner filed a *pro se* petition for a writ of habeas corpus in the circuit court in which he claimed that his trial lawyer had been ineffective for failing to investigate and call witnesses in petitioner's defense at trial, his appellate lawyer had a conflict of interest, the conviction was void because the information failed to charge the crime of attempt and the evidence adduced at trial was insufficient to establish that petitioner was guilty of attempted sexual assault. On September 12, 2005, the court denied the motion without a hearing. Petitioner followed with a second petition on February 23, 2006. The trial court held a hearing on this motion, after which it denied the petition. Petitioner unsuccessfully appealed both circuit court orders to the state court of appeals and state supreme court. The Wisconsin Supreme Court denied Obriecht's petition for review of the first denial on January 9, 2007 and of the second denial on June 12, 2007.

On July 26, 2007, petitioner filed the instant application for a writ of habeas corpus.

10

OPINION

I. Equitable Tolling

The Antiterrorism and Effective Death Penalty Act of 1996 established a one year limitations period for all habeas proceedings running from certain specified dates. 28 U.S.C. § 2244. In general, a state prisoner has to file his federal habeas petition no later than one year from the date on which judgment in the state case became final by the conclusion of direct review or the expiration of the time for seeking such review. § 2244(d)(1)(A). In this case, petitioner's conviction became final on March 17, 2002, meaning that he had until March 17, 2003 in which to bring a federal habeas petition. Although a properly filed motion to the state court for post-conviction relief tolls the limitations period, § 2244(d)(2), petitioner did not file such a motion until June 2005. Because this was more than two years after his federal deadline expired, the motion had no tolling effect. Graham v. Borgen, 483 F.3d 475, 483 (7th Cir. 2007). The instant petition is more than four years too late.

Conceding that his petition is untimely, petitioner urges the court to allow the petition under the judge-made doctrine of equitable tolling. Because the one-year deadline is not jurisdictional, Day v. McDonough, 547 U.S. 198, 206 (2006), equitable tolling is available, at least in theory. Lawrence v. Florida, 127 S. Ct. 1079, 1085 (2007) (assuming without deciding that equitable tolling is allowable under § 2244(d)); Pace v. DiGuglielmo, 544 U.S. 408, 418 n.8 (2005) (same); Taliani v. Chrans, 189 F.3d 597, 598 (7th Cir. 1999)

11

(same, but questioning whether equitable tolling allowable under AEDPA in light of § 2244(d)'s express tolling provisions).   To be entitled to equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing.  Pace, 544 U.S. at 418.  "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule."  United States v. Marcello, 212 F. 3d 1005, 1010 (7th Cir. 2000).  The Court has allowed equitable tolling "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."  Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).  Equitable tolling may also be appropriate where a court has misled a party regarding the steps he needs to take to preserve a claim.  See, e.g., Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151 (1984) (referring to situation in which "the court has led the plaintiff to believe that she has done everything required of her"); Taylor v. Horn, 2007 WL 2728668, *7 (3d Cir. Sept. 20, 2007) (equitable tolling appropriate where petitioner pursued claims diligently and district court had assured petitioner that claims presented in initial timely petition could later be reasserted in "amended" petition that would relate back to timely petition).

Petitioner makes no suggestion that this court misinformed him about his federal deadline or the steps he needed to take to preserve his right to federal review of his claims when it issued its January 2003 order dismissing petitioner's initial petition and denying his request for a stay. Petitioner admits that he knew his federal deadline would expire on March 17, 2003 unless he filed a state court collateral attack. He also concedes that with 60 days remaining on his federal clock at the time this court dismissed his petition, the timeliness of a future habeas challenge was not in jeopardy "in the strict sense." Pet.'s Mot. to Extend Deadline for Filing Pet. for Writ of Habeas Corpus, dkt. #3, at 27.

Petitioner contends that he did not file his state court motion until June 2005 because Glasbrenner had advised him (incorrectly) that his deadline for filing a federal habeas petition was tolled for as long as his direct appeal from his post-revocation sentence was pending in the state courts. However, a lawyer's negligence is not an extraordinary circumstance warranting equitable tolling, "particularly in the postconviction context where prisoners have no constitutional right to counsel." Lawrence, 127 S. Ct. at 1085 (citing Coleman v. Thompson, 501 U.S. 722, 756-757 (1991)). "The rationale is that attorney negligence is not extraordinary and clients, even if incarcerated, must 'vigilantly oversee,' and ultimately bear responsibility for, their attorneys' actions or failures." Modrowski v. Mote, 322 F.3d 965, 968 (7th Cir. 2003) (citing Johnson v. McCaughtry, 265 F.3d 559, 566 (7th Cir. 2001)). A client harmed by his lawyer's negligence may seek relief by filing a legal

13

malpractice suit or an ineffective assistance of counsel claim, but forcing the opposing party to defend against a stale claim is not a proper remedy.  Taliani, 189 F.3d at 598; United States v. 7108 West Grand Avenue, Chicago, Ill., 15 F.3d 632, 634 (7th Cir. 1994).

Petitioner cites cases from other circuits holding that filing deadlines can be equitably tolled for circumstances exceeding the bounds of "ordinary" attorney negligence.  For example, in United States v. Wynn, 292 F.3d 226, 230 (5th Cir. 2002) (§ 2255 case) and Seitzinger v. Reading Hosp. and Medical Center, 165 F.3d 236, 241 (3d Cir. 1999) (employment discrimination case), the courts found that a lawyer's affirmative misrepresentations to a client went beyond garden variety neglect and could be a circumstance sufficient to justify equitable tolling.  Similarly, in Baldayaque v. United States, 338 F.3d 145, 152 (2d Cir. 2003) (§ 2255 case) and Spitsyn v. Moore, 345 F.3d 796, 801 (9th Cir. 2003) (§ 2254 case), a lawyer's failure to file a collateral attack on behalf of his client in spite of being hired to do so, combined with a lack of communication with the client, was found to be misconduct "sufficiently egregious" to warrant tolling of AEDPA's one-year limitations period.  However, the Court of Appeals for the Seventh Circuit has rejected the reasoning of these cases and has maintained that "attorney misconduct, whether labeled negligent, grossly negligent, or willful, is attributable to the client."  Modrowski, 322 F.3d at 968 (disavowing Wynn and Seitzinger).  See also 7108 West Grand Avenue, 15 F.3d at 634 ("[W]hy should the label "gross" [negligence] make a difference to the underlying

14

principle:  that the errors and misconduct of an agent redound to the detriment of the principal (and ultimately, through malpractice litigation, of the agent himself) rather than of the adversary in litigation?").  Petitioner has not cited any case from the Seventh Circuit suggesting that the court has deviated from its position that attorney misconduct, no matter how egregious, does not justify equitable tolling.

Seventh Circuit law aside, petitioner's appeal to equitable tolling still fails because he has not shown that Glasbrenner's negligence was anything other than garden variety. Petitioner posits that Glasbrenner intentionally misled him into believing that his federal deadline had been tolled in an attempt to hide the fact that she had done "next to nothing" on his case and to defraud him of his money.  However, all he puts forth to support his theory are 1) Glasbrenner's failure to file a state court motion for post-conviction relief and 2) her misconduct with respect to the State Public Defender's Office.  With respect to the former, it is ludicrous for petitioner to suggest that, because Glasbrenner did not file a state court petition, she must have done no work towards preparing one.  Petitioner's suggestion is refuted by his own documents, which show that in the six months after she was hired, Glasbrenner met with petitioner in person on at least two occasions, obtained his transcripts and reviewed them, developed legal theories supporting his claims, spoke to his case worker, filed motions for extension on petitioner's behalf and, when petitioner's competence came into question, filed a motion in the circuit court for a competency determination.  It appears

15

that Glasbrenner was ready to file a state court petition for a writ of habeas corpus in early June 2003 had questions not arisen about petitioner's competency.  Shortly thereafter, she withdrew from the case.

These facts share little in common with those in Baldayaque and Spitsyn, the cases relied on by petitioner.  In Baldayaque, 338 F.3d at 152, the lawyer not only failed to file a § 2255 petition as directed by the petitioner's representatives, but also failed to conduct any legal research, never spoke to the petitioner or met with him and made no effort to locate petitioner after a letter he sent to him had been returned.  In Spitsyn, 345 F.3d at 798, the lawyer effectively abandoned his client, failing to respond to inquiries by petitioner and his mother or to file a § 2254 petition before the deadline expired even though he had been hired to do so nearly a year beforehand.  In contrast, Glasbrenner communicated regularly with petitioner, conducted legal research, prepared or at least started to prepare a state court petition for habeas corpus and took steps to stay apprised of petitioner's mental condition.  Under these circumstances, her misunderstanding about the effect of the state court proceedings on petitioner's federal habeas deadline was nothing more than ordinary negligence that does not justify equitable tolling.  Accord Miranda v. Castro, 292 F.3d 1063, 1066-67 (9th Cir. 2002) (state court attorney's erroneous calculation of petitioner's federal habeas deadline did not warrant equitable tolling); Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001) (lawyer's erroneous advice that petitioner had one year from conclusion

16

of state court collateral review in which to file federal habeas petition not sufficient to warrant equitable tolling); <u>Helton v. Secretary for Dept. of Corrections</u>, 259 F.3d 1310, 2424 (11th Cir. 2001) (same); <u>Harris v. Hutchinson</u>, 209 F.3d 325, 326-27 (4th Cir. 2000) (same).

Glasbrenner's misdemeanor conviction and license suspension in connection with her having overbilled the State Public Defender's office does not alter this conclusion. Glasbrenner's professional misconduct occurred between May 2000 and December 2001, well before she began representing petitioner.   <u>In re Disciplinary Proceedings Against Glasbrenner</u>, 2005 WI 50, ¶5.  In the disciplinary proceeding, Glasbrenner was found to have sloppy billing habits that led to her submitting bills that were excessive or unreasonable, but there was no evidence that Glasbrenner intended to defraud the public defender's office or that her billing affected the representation of her clients.  <u>Id</u>. at ¶¶6-10.  Attorneys at the disciplinary hearing testified that she was "an outstanding attorney who worked long hours as a vigorous advocate for her clients" and that she had "an excellent professional reputation and character."  <u>Id</u>.  at ¶8.  Without more, Glasbrenner's professional misconduct before she had ever met petitioner lends no support to his accusation that she deliberately lied to him about his federal deadline or to his claim that she did no work on his case.

Apart from Glasbrenner's alleged malfeasance, petitioner has not argued that any other circumstance prevented him from filing his petition on time.  Although petitioner

brings up his status as "a mental patient," he does so only in the context of arguing that the court should consider that status in determining whether he exercised reasonable diligence in pursuing his federal claims.  Having found that Glasbrenner's alleged misconduct was not an extraordinary circumstance, it is not necessary to consider whether petitioner exercised the required diligence. For the sake of completeness, however, I note that petitioner's confinement at a mental health facility does not automatically show that he lacked the mental capacity to act on his rights.  To be entitled to equitable tolling, petitioner must submit evidence to show a causal connection between his alleged mental incapacity and his ability to file a timely petition.  <u>Miller v. Runyon</u>, 77 F.3d 189, 192 (7th Cir. 1996) ("[M]ental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them") (citations omitted; emphasis in original).

Petitioner has not adduced such evidence.  Although he asserts in his reply brief that he was found to be incompetent during "much of the two year time period" from March 2003 to June 2005, that claim is not supported by the record.  The sole document to which petitioner cites, a report indicating that he was committed to the Acute Psychological Stabilization Unit in April 2003, does not indicate whether or when petitioner was transferred from that unit, much less establish that petitioner was incompetent for a two-year time period.  In fact, as noted above, the circuit court deemed petitioner to be

18

competent in November 2003.  The record in this case simply does not support petitioner's allegation of mental incapacity, much less show that that incapacity prevented petitioner from acting on his rights.  Lawrence, 127 S. Ct. at 1086 (rejecting equitable tolling where petitioner made no factual showing of mental incapacity); Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (petitioner entitled to evidentiary hearing to determine whether equitable tolling appropriate because of petitioner's mental incompetence where petitioner submitted sworn pleading indicating that he was incompetent during years in which petition should have been filed); Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001) (evidentiary hearing required where record contained evidence "of ongoing, if not consecutive, periods of mental incompetency" that could have affected petitioner's ability to file timely habeas petition), overruled in part on other grounds by Carey v. Saffold, 536 U.S. 214 (2002).

Even if this court was to give petitioner the benefit of the doubt and toll the federal limitations period from February 2003, when petitioner was first placed in medical segregation, to November 2003, when he was deemed competent to proceed, petitioner offers no reasonable excuse for his lack of diligence from November 2003 to June 2005, when he finally filed his state court collateral attack.  Although petitioner alleges that he was attempting to obtain money to hire a lawyer to succeed Glasbrenner, he has not explained why he could not have filed his claims *pro se*, as he eventually did in June 2005.  As petitioner was aware from this court's January 2003 order, he had no federal constitutional

right to have a lawyer represent him in collateral proceedings.  Pennsylvania v. Finley, 481 U.S. 551, 555 (1987).  No matter what any lawyer did or did not do, it was petitioner's duty to pursue his rights diligently.  He failed to do so.

Petitioner explains away his lack of diligence by asserting that Glasbrenner "lulled him into a false sense of security" by leading him to believe that his federal limitations period would be tolled for as long as his direct appeal from his post-revocation sentence was pending in state court.  Yet petitioner has not presented any evidence to show that he took any steps towards getting his state court direct appeal back on track once he was deemed competent.  Petitioner blames the stall in the appellate proceedings on Glasbrenner's failure to inform the court of appeals that the trial court had granted her motion to withdraw from representing petitioner, but it is not entirely clear that the appellate court was not so informed.  In any case, it was not reasonable for petitioner to sit back and do nothing to check on the status of his appeal for more than two years after Glasbrenner withdrew, particularly in light of his purported belief that his federal case would not go forward until that appeal was resolved.  Accord Drew v. Dept. of Corrections, 297 F.3d 1278, 1287 (11th Cir. 2002) (petitioner who alleged that he did not receive district court's order dismissing first habeas petition until more than one year after it was issued not entitled to equitable tolling where petitioner made no effort to ascertain status of petition for 16 months); Woodward v. Williams, 263 F.3d 1135, 1143 (10th Cir. 2001) ("[A] prisoner's lack of

knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter.")

Finally, I note that petitioner's claim that from March 2003 to June 2005, he was belaboring under the mistaken impression that his federal deadline had been tolled is suspect in light of a sworn statement petitioner filed in this court on September 21, 2005.  In that statement, petitioner averred that he had been unable to file a state court postconviction motion before his federal habeas deadline expired on March 17, 2003 because of frequent lock downs at the Appleton, Minnesota institution in early 2003 and his placement in medical segregation and eventual transfer to the Wisconsin Resource Center on March 19, 2003.  (Although petitioner indicated in this motion that the date on which he was transferred to the Wisconsin Resource Center was March 19, 2005, it is clear that this was a typographical error.)  Petitioner asserted that after his arrival at the Wisconsin Resource Center, he was denied access to the law library for "months."  When he did obtain access to the library, he said, he "then became very occupied with two other criminal appeals on case nos:  99CF2189 and 00CF2286," which prevented him from pursuing his federal claims in state court until June 20, 2005.  Obriecht v. Swenson, 03-C-004-C, dkt. #7.  Nowhere in that sworn statement did petitioner allege that his failure to pursue his federal claims was caused by any misunderstanding that his deadline had been tolled or any misconduct by Glasbrenner.

21

In sum, even assuming the law of this circuit allowed for equitable tolling upon a showing of egregious attorney misconduct, petitioner has failed to show that his attorney committed anything more than garden variety negligence when she advised him that his federal deadline was tolled so long as his state court direct appeal from his post-revocation sentence was tolled. Such negligence does not amount to an extraordinary circumstance sufficient to justify equitable tolling. Further, petitioner has not shown that he was diligent in pursuing his rights. Accordingly, his petition is untimely.

### B.  Stay-and-Abey

In the alternative, petitioner asks this court to vacate its January 23, 2003 order dismissing his habeas petition, reinstate the petition and allow the instant petition as an amendment relating back to the initial, timely petition that petitioner filed in December 2002. But this request is plagued by the same inequities that doomed his request for equitable tolling. In habeas cases as in other civil cases, Fed. R. Civ. P. 60(b) specifies the process for obtaining relief from final judgments, provided the ground on which relief is sought does not attack the substance of a court's resolution of a claim on the merits. Arrieta v. Battaglia, 461 F.3d 861, 864 (7th Cir. 2006) (citing Gonzalez v. Crosby, 545 U.S. 524 (2005)). Because petitioner did not file his motion until more than one year after the judgment became final, he is limited to seeking relief under the rule's "catchall" provision,

which allows a court to reopen a final judgment "for any other reason justifying relief from the judgment." Rule 60(b)(6). Such motions must be brought "within a reasonable time" and must be accompanied by a showing of "'extraordinary circumstances' justifying the reopening of a final judgment." Arrieta, 461 F.3d at 865 (quoting Crosby, 545 U.S. at 535). For the reasons discussed in the preceding section, petitioner has failed to show that he brought his motion within a reasonable time or that extraordinary circumstances exist.

## C.  Insufficiency of Criminal Complaint

Finally, petitioner contends that even if his petition is deemed untimely, this court must address his claim that the criminal complaint that charged him with attempted sexual assault was defective because it failed to set forth all of the elements of the crime. Petitioner contends that the defects in the complaint deprived the circuit court of jurisdiction. As the final plank in his argument, petitioner contends that jurisdictional issues can never be defaulted.

Petitioner's argument falters on its second premise. Contrary to petitioner's position, "defects in an indictment do *not* deprive a court of its power to adjudicate a case." United States v. Cotton, 535 U.S. 625, 630-31 (2002) (emphasis added). Accordingly, a defective indictment claim may be forfeited.

ORDER

IT IS ORDERED that the petition of Andrew Matthew Obriecht for a writ of habeas corpus is DISMISSED WITH PREJUDICE for petitioner's failure to file it within the one-year limitations period set forth in 28 U.S.C. § 2244(d).

Entered this 23rd day of October, 2007.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge

24